**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VERIZON EMPLOYEE BENEFITS COMMITTEE,<br><br>Plaintiff,<br><br>v.<br><br>EDGAR A. IRIZARRY, *et al.*,<br><br>Defendants. | Civil Action No. 23-1708 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

      This matter comes before the Court on **Defendant Edgar Irizarry's ("Defendant") Motion to Dismiss (ECF No. 44) Plaintiff Verizon Employee Benefits Committee's ("Plaintiff") Amended Complaint (ECF No. 42)** and **Defendant Sara Irizarry's ("Ms. Irizarry" or "Cross-Claimant") cross-claim (ECF No. 26)** pursuant to Federal Rule of Civil Procedure[1] 12(b)(6). Plaintiff opposed the Motion (ECF No. 49), and Defendant replied (ECF No. 50).[2] The Court has considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, **Defendant's Motion to Dismiss is granted in part and denied in part.**

---

[1] Unless otherwise noted, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[2] Ms. Irizarry did not oppose or otherwise respond to Defendant's Motion to Dismiss.

I.    **BACKGROUND**

    A.    **Statement of Facts**

        Defendant was formerly employed by Verizon Communications Inc. ("Verizon") and its predecessor, Bell Atlantic Corporation ("Bell Atlantic") until 2010. (Am. Compl. ¶¶ 7, 17, ECF No. 42.) Plaintiff is a fiduciary of the Verizon Management Pension Plan (the "Plan" or "Pension Plan").[3] (*Id.* ¶ 3.) During Defendant's employment, he participated in Bell Atlantic's pension plan, which eventually became the current Plan. (*Id.* ¶ 7.) The Pension Plan is covered by and subject to the Employee Retirement Income Security Act ("ERISA"). (*Id.* ¶ 8.)

        In 1999, Defendant and Ms. Irizarry divorced. (*Id.* ¶ 10.) As part of their divorce, the Superior Court of New Jersey, Monmouth County, issued a Qualified Domestic Relations Order ("QDRO") to divide their assets. (*Id.*) The QDRO entitled Ms. Irizarry to 50% of "a fraction of [Defendant's] retirement benefit, with the numerator . . . being the number of months of credited service during the marriage, and the denominator . . . being the total months of service credited to [Defendant] under the Pension Plan at the time of his retirement." (*Id.* ¶ 15.)

        The QDRO also designated Ms. Irizarry as Defendant's "surviving spouse for purposes of a Qualified Joint and Survivor Annuity." (*Id.* ¶ 16.) When Defendant eventually retired from Verizon, he "was required to elect a Qualified Joint and Survivor Annuity . . . with [Ms. Irizarry] designated as the surviving spouse." (*Id.*) In other words, Defendant would receive his portion of the pension through a Qualified Joint and Survivor Annuity (as opposed to a lump sum payment), which Ms. Irizarry would also receive a portion of. (*Id.*) Plaintiff's predecessor (the Bell Atlantic Qualified Order Team) was provided with a copy of Defendant's QDRO in 2000. (*Id.* ¶ 14; *see*

---

[3] More specifically, Plaintiff has been delegated the responsibility for the "Pension Plan's day-to-day administration to the pension administration department within [Verizon's] human resources department[.]" (Am. Compl. ¶ 3.)

*also* Def.'s Mot. to Dismiss 5, ECF No. 44-1.) Defendant received a follow up letter confirming, in relevant part, that "[w]hen application is made for payment of the pension benefit, the provisions of the [QDRO] will be followed." (*Id.*)

Around this time, Bell Atlantic and its pension plan administrator went through significant structural changes. (*Id.* ¶¶ 28-32.) In 1997, Bell Atlantic's pension plan administrator was acquired and later underwent a merger. (*Id.* ¶ 30.) That same year, Bell Atlantic merged with another telephone company, NYNEX. (*Id.* ¶ 29.) A few years later, Bell Atlantic merged with GTE Corporation ("GTE") to form Verizon. (*Id.* ¶ 28.) Verizon then selected a new administrator to manage its Pension Plan, which Defendant continued to participate in. (*Id.* ¶ 31.) According to Plaintiff, the "transition of administrative responsibilities from [the old plan administrator to the new administrator] required the transfer . . . of a significant amount of data and voluminous files and documents concerning the Pension Plan's participants whose number far exceeds 100,000." (*Id.* ¶ 32.)

Defendant eventually stopped working for Verizon in 2010 and formally retired in February 2011. (*Id.* ¶¶ 17, 22; *see also* Def.'s Mot. to Dismiss 26; Pl.'s Opp'n Br. 19, ECF No. 49.) Soon after retiring, Defendant signed a Pension Election Authorization Form, in which he elected to receive his pension as a single lump sum payment in the amount of $556,643.29. (*Id.* ¶¶ 17-19.) His signature on the form "certified that no portion of his benefit under the Pension Plan had been assigned to an alternate payee due to a QDRO." (*Id.* ¶ 18.) This was, of course, not true. The QDRO entitled Ms. Irizarry to a part of Defendant's pension and further required Defendant to get his pension as an annuity, not a lump sum payment. (*Id.* ¶¶ 15-19.) Plaintiff, nevertheless, paid Defendant a single lump sum of $556,643.29 in early 2011. (*Id.* ¶ 22.) The lump sum payment did not account for Ms. Irizarry's share of the pension. (*Id.* ¶ 20.) Defendant thus received the

entirety of the pension funds, including Ms. Irizarry's portion. (*Id.* ¶ 26.) Ms. Irizarry has not received any disbursement from the pension to date. (*Id.*)

Approximately eleven years later, in 2022, Ms. Irizarry contacted Plaintiff's Benefits Center to inquire why she had not yet received her portion of Defendant's pension. (*Id.* ¶ 27.) That phone call led Plaintiff to discover the overpayment of pension benefits that had been made to Defendant. (*Id.*) Plaintiff initiated this litigation to recover the sum owed to Ms. Irizarry shortly thereafter. (*See* Compl., ECF No. 1.)

**B.    Procedural History**

Plaintiff filed a Complaint against Defendant, Ms. Irizarry, and Morgan Stanley, LLC on March 27, 2023. (*See* Compl.) Plaintiff voluntarily dismissed Morgan Stanley as a defendant on April 19, 2023 (*see* Notice of Voluntary Dismissal, ECF No. 17), and subsequently amended the Complaint to reflect this change. (*See* Am. Compl.) Count One of the Amended Complaint seeks to recover Plaintiff's overpayment to Defendant under § 1132(a)(3) of ERISA, which authorizes plan fiduciaries to file suit "to obtain . . . appropriate equitable relief . . . to enforce . . . the terms of the plan." *See* 29 U.S.C. § 1132(a)(3); (Am. Compl. ¶¶ 34-40.) Count Two requests "declaratory relief [under § 1132(a)(3)] concerning the interpretation of the QDRO issued by the New Jersey Monmouth County Superior Court[.]" (Am. Compl. ¶¶ 41-50.)

Ms. Irizarry filed an Answer and a cross-claim against Defendant. (Irizarry Answer & Cross-Cl. ¶ 46, ECF No. 26.) The cross-claim, comprised of a single paragraph, asserts that Ms. Irizarry "is entitled to monthly benefits pursuant to the QDRO that include a pro rata share of the early retirement subsidy." (*Id.*) Defendant moved to dismiss Plaintiff's Amended Complaint and Ms. Irizarry's cross-claim, or in the alternative, to stay the proceedings and transfer Count Two to the New Jersey Superior Court, Monmouth County, Family Part. (*See generally* Def.'s Mot. to

Dismiss.) Plaintiff opposed the Motion, (Pl.'s Opp'n Br.), and Defendant replied (Def.'s Reply, ECF No. 50). Ms. Irizarry did not oppose or otherwise respond to the Motion to Dismiss her cross-claim.

## II.   **LEGAL STANDARD**

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 555 (2007)). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). A district court generally may not consider matters outside the four corners of the complaint, except for "document[s] integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

III.   **DISCUSSION**

Defendant advances four arguments in support of dismissal: (1) the statute of limitations bars Plaintiff's Amended Complaint; (2) the equitable doctrine of laches bars Plaintiff's Amended Complaint; (3) Ms. Irizarry's cross-claim must be dismissed as it fails to state a claim for relief against Defendant; and (4) as an alternative to dismissal, the Court should stay proceedings and transfer Count Two of the Amended Complaint to the New Jersey Superior Court. (*See* Def.'s Mot. to Dismiss 8-29.) The Court addresses each argument in turn.

A.   **Statute of Limitations**

In his Motion, Defendant primarily argues that the statute of limitations bars Plaintiff's Complaint because Plaintiff seeks to recover overpaid pension benefits, the recovery of which is governed by New Jersey's six-year statute of limitations applicable to breach of contract, quasi-contract, or unjust enrichment claims. (*See* Def.'s Mot. to Dismiss 8-21.) While Plaintiff does not dispute that the action was filed outside the six-year statute of limitations period, it argues that the lump sum distribution was "the direct result of [Defendant's] fraud in misrepresenting on his pension election form that he had not previously assigned any portion of his pension to an alternate payee pursuant to a QDRO." (Pl.'s Opp'n Br. 7.) Plaintiff thus asserts that it did not discover Defendant's misrepresentations until August 2022, when Ms. Irizarry contacted Plaintiff's Benefit Center to inquire about the status of her pension payments. (*Id.*) This action was brought shortly thereafter in March 2023. (*See* Compl.) As such, Plaintiff contends that this action is not time-barred by virtue of the discovery rule. (Pl.'s Opp'n Br. 7.)

A defendant generally must plead a statute of limitations defense in an answer, rather than a motion to dismiss. *See Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002). In this circuit, however, parties may raise a limitations defense in a Rule 12(b)(6) motion "only when the statute

of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

When deciding a Rule 12(b)(6) motion based on the expiration of the statute of limitations, the Court must analyze: "(1) what law governs the statute of limitations; (2) the length of time provided for by the statute of limitations; (3) what law governs accrual of the cause of action; and (4) when the statute began to accrue for Plaintiff's claim." *Crisdon v. City of Camden*, No. 11-2087, 2012 WL 685874, at *3 (D.N.J. Mar. 2, 2012).

      *i.*     *What Statute of Limitations Applies?*

Plaintiff brings this action under ERISA's civil enforcement provision, 29 U.S.C. § 1132. (*See* Am. Compl. ¶¶ 37, 43.) ERISA, however, "does not set any limitations period for non-fiduciary claims brought pursuant to [§ 1132]." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992); *see also Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007) (noting that ERISA does not contain an explicit statute of limitations for non-fiduciary benefit claims brought under 29 U.S.C. § 1132). It is well settled that "state statutes of limitations govern the timeliness of federal causes of action unless Congress has specifically provided otherwise."; *Int'l Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703-04 (1966) (collecting cases). Accordingly, "when Congress omits a statute of limitations for a federal cause of action, courts 'borrow' the local time limitation most analogous to the case at hand." *Gluck*, 960 F.2d at 1179 (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355 (1991)). Where ERISA does not supply a statute of limitations for an action, courts "apply the statute of limitations for the state

claim most analogous to the ERISA claim pursued." *Id.; see also Vernau v. Vic's Mkt., Inc.*, 896 F.2d 43 (3d Cir. 1990) (applying analogous state statute of limitations to ERISA claim).

Both parties agree that Plaintiff's overpayment claim is analogous to a claim for unjust enrichment. (*Compare* Def.'s Mot. to Dismiss 10 ("[Plaintiff's] claim can properly be characterized as a quasi-contract claim, such as unjust enrichment") *with* Pl.'s Opp'n Br. 7 ("[Defendant's] motion to dismiss is premised on his assertion that [Plaintiff's claim] is governed by New Jersey's six- year statute of limitations applicable to either claims for breach of contract, quasi-contract, or unjust enrichment. Plaintiff does not dispute this proposition.").) Relevant case law also lends support for the proposition that ERISA overpayment claims are analogous to unjust enrichment claims. *See Luby v. Teamsters Health, Welfare, & Pension Tr. Funds*, 944 F.2d 1176, 1186 (3d Cir. 1991) ("[I]t is clear that Congress intended federal courts to fashion a federal common-law under ERISA, and this permits application of a federal common-law doctrine of unjust enrichment if restitution would not override a contractual provision of an ERISA plan."). The statute of limitations for an unjust enrichment claim in New Jersey is six years. *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 391 (D.N.J. 2015) (quoting *Kopin v. Orange Prods.*, 297 N.J. Super. 353, 373-74 (1997)). A six-year statute of limitations therefore governs Plaintiff's claims.

ii.     *When Does the Statute of Limitations Begin to Accrue?*

While the parties seemingly agree that the applicable statute of limitations is six years, they disagree as to when the statute of limitations began to accrue. Defendant contends that Plaintiff's action started to accrue in 2011 when Plaintiff made his benefits election and approved the lump sum distribution payment in question. (*See* Def.'s Mot. to Dismiss 1, 13.) Plaintiff, on the other

hand, asserts that the statute of limitations started running in August 2022, when it was contacted by Ms. Irizarry and allegedly first discovered that it overpaid Defendant. (*See* Pl.'s Opp'n Br. 7.)

Federal law dictates when federal claims accrue. *See Miller*, 475 F.3d at 520 (holding, in a non-fiduciary ERISA claim case, that "the accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period."); *Romero v. Allstate Corp.*, 404 F.3d 212, 221 (3d Cir. 2005) (discussing that "[t]he date of accrual of the ERISA non-fiduciary duty claims asserted is determined as a matter of federal common law."). The statute of limitations for federal claims begins to run once "a plaintiff has a 'complete and present cause of action.'" *Merck & Co. v. Reynolds*, 559 U.S. 633, 644 (2010) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 195 (1997)).

This rule does not apply, however, when a defendant's deceptive conduct prevents a plaintiff from even *knowing* it has a complete cause of action. *Id.* at 644. "[W]here a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on [its] part, the bar of the statute does not begin to run until the fraud is *discovered.*" *Id.* at 644-45 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). "Fraud is deemed to be discovered . . . when, in the exercise of reasonable diligence, it could have been discovered." *Id.* at 645 (quoting 2 H. Wood, Limitation of Actions § 276b(11), p. 1402 (4th ed. 1916)). This is commonly referred to as the discovery rule. *See generally id.* at 645. In sum, then, if Defendant injured Plaintiff through fraud, the statute of limitations started running when Plaintiff "first knows or with due diligence should know facts that will form the basis for an action." *Id.* at 646.

>        iii.     *Does the Discovery Rule Apply?*

As a preliminary matter, Defendant argues that the discovery rule does not apply because Defendant did not commit fraud. (Def.'s Mot. to Dismiss 15-16.) In Defendant's telling, Plaintiff characterizes Defendant's conduct as fraudulent "by accusing [Defendant] of falsely misrepresenting in the benefit election form that his pension is not subject to a QDRO." (*Id.* at 15.) According to Defendant, however, Plaintiff has provided no "evidence that [his] signature . . . was the product of intentional fraud as opposed to simple mistake in him overlooking fine print on a boiler-plate looking document." (*Id.*)

Plaintiff responds that it "expressly alleged that [Defendant's] false certification . . . was the product of fraud and culpable conduct[,]"and "[t]o the extent [Defendant] now seeks to explain his false certification by assertions of mistake or inadvertence, those proposed explanations clearly require further development through discovery." (Pl.'s Opp'n Br. 8; *see also* Am. Compl. ¶¶ 17-18.) Moreover, Plaintiff argues that Defendant's claim that he did not read the fine print cuts against well-settled case law that "affixing a signature to a contract creates a conclusive presumption that the signer read, understood, and assented to its terms." *Fleming Cos. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 843 (D.N.J. 1995).

The Court agrees with Plaintiff. For one, at the motion to dismiss stage, the Court must accept all of the plaintiff's well-pleaded factual allegations as true and "construe the complaint in the light most favorable to the plaintiff." *Fowler*, 578 F.3d at 210 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Plaintiff alleges that Defendant certified that his pension was not subject to a QDRO, and that this certification was false. (*See* Am. Compl. ¶¶ 17-19.) Construing the allegations in a light most favorable to Plaintiff, the Court does not view Defendant's false certification as the product of mere inadvertence. In so doing, the Court remains

mindful of the case law referred to by Plaintiff—applying a conclusive presumption of assent to a signed contract. *See Fleming*, 913 F. Supp. at 843; *see also Greenfield v. Twin Vision Graphics, Inc.*, 268 F. Supp. 2d 358, 373-74 (D.N.J. 2003); *Highland Cap. Corp. v. Pasto*, No. 19-14282, 2022 WL 6741730, at *18 (D.N.J. Oct. 11, 2022).

Nor is the Court persuaded that it must find proof of actual fraud before invoking the discovery rule. Indeed, application of the discovery rule does not necessarily depend on a finding of *intentional* fraud. *See Reynolds*, 559 U.S. at 645 ("[S]tate and federal courts have applied forms of the 'discovery rule' to claims other than fraud . . . [and] treatise writers now describe 'the discovery rule' as allowing a claim to accrue when the litigant first knows or with due diligence should know facts that will form the basis for an action.") (quotations and citations omitted) (emphasis omitted). At minimum, dishonest or deceptive conduct is enough to apply the rule. *See id.* at 644 ("This Court long ago recognized that something different was needed in the case of fraud, where a defendant's *deceptive* conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded." (emphasis added)). Considering Defendant's false certification that he had not previously assigned any portion of his pension to an alternate payee pursuant to a QDRO, the Court finds that application of the discovery rule is warranted here.

### iv.    *When Did Plaintiff Discover Defendant's Conduct?*

Even applying the discovery rule, Defendant contends that Plaintiff first discovered the fraud in 2011 because: (1) Plaintiff had a duty "to know that [Defendant's] account was subject to a QDRO[,]" and (2) Plaintiff *did*, in fact, know that Defendant's account was subject to a QDRO as it acknowledged receipt of the QDRO in early 2000. (Def.'s Mot. To Dismiss 6, 15, 19-21; Am. Compl. ¶ 14.) According to Defendant, therefore, "[Plaintiff] knew upon receipt of the QDRO that [Defendant] was ineligible to receive a lump sum payment and that it needed to set aside a portion

11

of his pension to an alternate payee." (*Id.* at 19.) Further, Defendant asserts that if Plaintiff exercised reasonable diligence, Plaintiff would have known that it overpaid Defendant the moment the lump sum payment was transmitted in 2011. (*See generally id.*)

Plaintiff counters that it first discovered Defendant's fraud in 2022 when Ms. Irizarry called Plaintiff's Benefits Center asking about the status of her pension benefits. (Pl.'s Opp'n Br. 10-11.) Plaintiff also notes that it went through a significant merger during Defendant's employment and changed pension plan administrators during that time. (*See id.* at 13-14.) To avoid mistakes "in record keep[ing] and data transfer . . . , [Plaintiff] implemented a check and balance process which required plan participants to make certifications on their pension election forms regarding key factors which could affect the amount of benefits due, including the existence of QDROs." (*Id.* at 11.) Plaintiff thus argues that "[Defendant] thwarted the effectiveness of that check and balance process by lying on his pension election form." (*Id.*)[4]

As Defendant points out, reasonable diligence very well may have revealed the overpayment in 2011, but this is not clear from the face of the Amended Complaint. (*See generally* Am. Compl.) Determining when a claim accrues is generally said to be a "fact-intensive issue." *Goodman v. Intervet, Inc.*, No. 22-02926, 2023 WL 2368123, at *3 (D.N.J. Mar. 6, 2023). For example, discovery may reveal whether Plaintiff was entitled to place "reliance on the accuracy of

---

[4] Defendant also seeks to apply the Third Circuit's "clear repudiation" rule to argue that Plaintiff's receipt of the QDRO triggered "Plaintiff's knowledge concerning the type of benefits to which [Defendant] was entitled." (*See* Def.'s Mot. to Dismiss 21.) The clear repudiation rule dictates that "some 'event other than a denial of a claim' may trigger the statute of limitations by clearly alerting the plaintiff that his entitlement to benefits has been repudiated." *Miller*, 475 F.3d at 521 (citing *Cotter v. E. Conference of Teamsters Ret. Plan*, 898 F.2d 424, 429 (4th Cir. 1990)). The rule, however, appears to be inapposite because Plaintiff does not claim it is entitled to any benefits, so there is nothing for Defendant to repudiate. The Court declines finding, at this stage, that the clear repudiation rule applies to this set of circumstances. To the extent that discovery may alter the Court's current calculus, Defendant may raise this argument on summary judgment.

the distribution forms filled out by the plan participants." (Def.'s Reply 8.) Discovery may also reveal if Plaintiff had the facts, namely the QDRO, to conduct a proper inquiry. (*Id.*) In sum, the parties shall be entitled to discovery to assess whether or not Plaintiff had the ability to discover the overpayment and should have done so before 2022. (*Id.* at 9-10.)

Defendant refers to an out-of-circuit case, *Verizon Employee Benefits Committee v. Frawley*, to argue that the Court should not apply the discovery rule to Plaintiff's claims. (Def.'s Mot. to Dismiss 16-19 (quoting 655 F. Supp. 2d 644 (N.D. Tex. 2008), *aff'd*, 326 F. App'x 858 (5th Cir. 2009)).) The *Frawley* court resolved a motion for summary judgment. 655 F. Supp. 2d at 645. Earlier in the proceedings, the *Frawley* court *denied* a motion to dismiss based on the discovery rule. *See Verizon Emp. Benefits Comm. v. Frawley*, No. 05-2105, 2007 WL 2051113, at *5 (N.D. Tex. July 12, 2007) ("[T]he issue of when Plaintiff should have discovered its claim is not ripe for determination at this point."). Like *Frawley*, without a more developed record, it is inappropriate to resolve Defendant's statute of limitations defense at the motion to dismiss stage.

> As noted above, the statute of limitations is not an element of a claim, but rather an affirmative defense that the defendant must plead and prove. In a very clear case, it may provide the basis for a Rule 12(b)(6) dismissal. But the wisdom of the usual approach—

decision of statute of limitations issues on a motion for summary judgment—is apparent here.[5]

*See Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 528 (D.N.J. 2017). The Court accordingly denies Defendant's Motion to Dismiss on his limitations defense.

### B.    Laches

Next, Defendant contends that the equitable doctrine of laches bars Plaintiff's claims. (*See* Def.'s Mot. to Dismiss 22-25.) Laches is an affirmative defense "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." *Wilson v. PNC Bank Nat'l Ass'n*, No. 21-1131, 2023 WL 4864294, at *8 (D.N.J. July 31, 2023) (quoting *Knorr v. Smeal*, 178 N.J. 169, 180-81 (2003)). Because ERISA provides equitable remedies, defendants may raise "equitable defenses such as laches." *Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 214 (3d Cir. 1998).

To invoke laches, a defendant must show that: (1) the plaintiff did not diligently pursue his claims; and (2) the defendant was prejudiced. *Scocozza v. New Jersey*, No. 14-2095, 2016 WL

---

[5] *See also Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) ("This court has stated, in the context of the discovery rule, that when 'the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal.'") (quoting *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011)); *LaTouche v. Merck & Co.*, No. 22-1619, 2022 WL 16555263, at *3 (D.N.J. Oct. 31, 2022) ("That is not to say, of course, that [plaintiff's] claims aren't time barred. All the [c]ourt can say for now is that a possibility of tolling exists, therefore it must await the benefit of discovery to see if [defendant's] affirmative defense pans out."); *Haq v. Nationwide Life & Annuity Ins. Co.*, No. 19-10553, 2020 WL 13887538, at *5 (D.N.J. Mar. 1, 2020) ("Taking the allegations of the [c]omplaint as true and liberally construing them in [p]laintiff's favor, at this time, the [c]ourt cannot conclude that the discovery rule would not serve to toll [p]laintiff's claims. The [c]ourt, therefore, finds that issues regarding the timeliness of the [c]omplaint are best addressed following discovery."); *Jannarone v. Sunpower Corp.*, No. 18-9612, 2019 WL 4058981, at *3 n.5 (D.N.J. Aug. 28, 2019) ("It is unclear when [p]laintiff should have reasonably discovered the System's defect . . . .The [c]ourt, therefore, declines to dismiss [p]laintiff's claims based on statute of limitations grounds, and finds this issue better resolved at summary judgment.").

1244372, at *3 (D.N.J. Mar. 30, 2016) (citing *Costello v. United States*, 365 U.S. 265, 282 (1961)). "The lack of diligence must be inexcusable and the delay must cause the prejudice." *Id.* (quoting *Robinson v. Am. Int'l Adjustment Co.*, No. 90-1270, 1990 WL 100309, at *5 (D.N.J. July 18, 1990)). A court must consider "the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" *Mt. Hawley Ins. Co. v. Swift Constr., LLC*, No. 15-2187, 2018 WL 1542153, at *7 (D.N.J. Mar. 29, 2018) (quoting *Lanvin v. Bd. of Educ.*, 447 A.2d 516, 520 (N.J. 1982)). "The core equitable concern in applying laches is *whether a party has been harmed by the delay*." *Id.* (quoting *Lanvin*, 447 A.2d at 519-20). Finally, the defendant has the burden of establishing both the plaintiff's unjustifiable delay and prejudice to defendant. *E.E.O.C. v. Great Atl. & Pac. Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984).

Defendant argues that Plaintiff's delay in bringing this action is unjustifiable because "[Plaintiff] should have known precisely what benefits [Defendant] [was] entitled to receive the moment it received the QDRO, and upon his election of benefits, [Plaintiff] *should have* known the nature of those payments (annuity) and the amount." (Def.'s Mot. to Dismiss 23.) As for harm resulting from the delay, Defendant argues that he will face "evidentiary prejudice, including lost documentary evidence, faded memories, and missing witnesses," as well as financial prejudice if the Court forces him to reimburse Plaintiff. (*Id.* at 24.)

Plaintiff responds that the Court should not address laches at the motion to dismiss stage because it is a fact-intensive inquiry inappropriate for resolution at this juncture. (Pl.'s Opp'n Br. 16.) Plaintiff asserts that even if the Court were to consider the substance of the laches defense, the argument would fail because: (1) a specific statute of limitations governs this action; (2) Plaintiff's delay was not inexcusable because it only discovered the overpayment in 2022; and (3) the harm to Defendant is speculative. (*Id.* at 16-19.)

For the same reasons discussed above, the Court cannot fully assess the merits of the laches defense at this early stage of the litigation. Like the statute of limitations, laches is a fact intensive inquiry.[6] *See Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1066 (3d Cir. 1991) ("[B]ecause the correct disposition of the equitable defense of laches can only be made 'by a close scrutiny of the particular facts and a balancing of the respective interests and equities of the parties, as well as of the general public,' it usually requires the kind of record only created by full trial on the merits.") (citations omitted); *Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 74 n.2 (3d Cir. 1986) ("Laches . . . can rarely be resolved without some preliminary evidentiary inquiry." (citations omitted)). Courts may rule on a laches defense at the motion to dismiss stage only "when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar." *Kaufhold v. Caiafa*, 872 F. Supp. 2d 374, 380 (D.N.J. 2012) (citation omitted); *see also Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 363 (3d Cir. 1983) (reversing dismissal based on laches due to "disputed issues of fact as well as undecided questions of law.").

Here, the record does not provide enough evidence to dismiss Plaintiff's Complaint based on laches. For one, the Court is unable to assess the period of delay. Laches begins to attach to fraud-based claims only "when the fraud is discovered by plaintiff or when it could have been discovered by [it] with due diligence or care on [its] part." *Tobacco & Allied Stocks v. Transam. Corp.*, 244 F.2d 902, 903 (3d Cir. 1957). Further, the issue of when Plaintiff could have discovered

---

[6] The Court disagrees with Plaintiff's argument that laches does not apply because this claim is "governed by a specific statute of limitations." (Pl.'s Opp'n Br. 17.) It is true that "in face of a statute of limitations *enacted by Congress*, laches cannot be invoked to bar legal relief." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 679 (2014) (emphasis added). But Congress never enacted a statute of limitations for private ERISA claims. *Gluck*, 960 F.2d at 1179. This circuit has also previously held that laches applies to ERISA claims. *See Fotta*, 165 F.3d at 214. The Court, therefore, will not deny Defendant's motion on this basis.

the overpayment is hotly contested. (*Compare* Def.'s Mot. to Dismiss 19 ("Verizon knew upon receipt of the QDRO that [Defendant] was ineligible to receive a lump sum payment . . . .") *with* Pl.'s Opp'n Br. 15 ("[Plaintiff] did not discover [Defendant's] fraud and the overpayment until August, 2022 . . . .").) Finally, the record does not clearly show that a period of delay prejudiced Defendant.[7] Put simply, there are not enough facts to dismiss Plaintiff's Amended Complaint based on this equitable doctrine. The Court therefore denies Defendant's Motion to Dismiss based on laches.

**C.    Dismissal of the Cross-Claim**

Third, Defendant argues that the Court should dismiss Ms. Irizarry's cross-claim. (Def.'s Mot. to Dismiss 26-27.) Ms. Irizarry did not oppose the Motion. Because the allegations in the cross-claim are insufficiently pled, the Court grants Defendant's Motion to Dismiss with respect to the cross-claim.

Ms. Irizarry's cross-claim consists of a single paragraph, alleging that she "is entitled to monthly benefits pursuant to the QDRO that include a *pro rata* share of the early retirement subsidy," and asks "[t]hat the Court enter a declaratory judgment" to that effect. (Irizarry Answer & Cross-cl. ¶ 46.) In moving to dismiss the cross-claim, Defendant argues that:

> [Ms. Irizarry's] cross[-]claim fails to set forth any basis for asserting relief against [Defendant]. The QDRO entitled [Ms. Irizarry] to a "right to a pension . . . through the . . . Pension Plan" and the intent

---

[7] The Court finds that Defendant's claims of prejudice are speculative. Defendant alleges that "lost documentary evidence, faded memories, and missing witnesses" will potentially prejudice Defendant. (Def.'s Mot. to Dismiss 24.) Mere possibility, however, is not enough to dismiss Plaintiff's complaint at this juncture. *See Travers v. FedEx Corp.*, 567 F. Supp. 3d 542, 552 (E.D. Pa. 2021) ("[Defendant] argues it suffered prejudice because [defendant] could have remedied [plaintiff's] complaints sooner had he sued earlier, documents 'may' have been destroyed, and witnesses' memories fade. But this prejudice is presently speculative."). Defendant's financial prejudice claim is similarly inadequate because "the mere loss of what one would have otherwise kept does not establish prejudice." *Asbestospray, Inc.*, 182 F.3d at 208 (citing *In re Bohart*, 743 F.2d 313, 325 (5th Cir. 1984).

of the QDRO was "to create and recognize the existence of the alternate payee's right to receive a portion of the participant's benefit under the Bell Atlantic Pension Plan." Ms. Irizarry has failed to plead any facts that entitle her to enforce the QDRO against [Defendant] personally, rather than a claim against [Plaintiff] for failing to follow the terms of the QDRO.

(Def.'s Mot. to Dismiss 26-27.)

ERISA allows "a participant or beneficiary" to bring a civil action "to recover benefits due to him [or her] under the terms of his plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(b) (emphasis added). "In creating the QDRO mechanism[,] Congress was careful to provide that the alternate payee, the 'spouse, former spouse, child, or other dependent of a participant,' is to be considered a plan beneficiary." *Boggs v. Boggs*, 520 U.S. 833, 847 (1997) (quoting 29 U.S.C. §§ 1056(d)(3)(K), (J)).

ERISA's private enforcement mechanism, however, is not unlimited and must be circumscribed. Section 1132 allows beneficiaries to recover benefits from the plan or enforce or clarify rights under the plan. *See Green v. Green*, 899 F. Supp. 2d 291, 299 (D.N.J. 2012) (quoting 29 U.S.C. § 1132 (a)(1)(b)). Section 1132, however, does not allow Ms. Irizarry to enforce Defendant's compliance with a QDRO and to pay her what she is allegedly owed under a state court domestic relations order. *See id.* at 299 (holding, in an action where an ex-wife sued to recover pension benefits that an ex-husband allegedly withheld from her, that the "compensation [the ex-wife] seeks is compliance by the [p]laintiff with a state domestic relations order, not benefits paid to her as a result of an ERISA plan."). Indeed, an action to enforce the QDRO would fall outside ERISA's scope, and spousal compliance with a QDRO remains a question of state, not federal law. *Id.* ("The Supreme Court has clearly held that the domestic relations of a husband [and] wife are governed by state, not federal law." (citing *Boggs*, 520 U.S. at 847-48)).

It follows that Ms. Irizarry may not ask this Court to enforce the QDRO and grant injunctive relief for Defendant to comply with the same. *See Green*, 899 F. Supp. 2d at 297. At this juncture, it is not clear whether Ms. Irizarry is seeking merely to be declared as a beneficiary under the pension plan or if she is seeking the Court to enforce the terms of the QDRO. Moreover, Ms. Irizarry has not filed an opposition brief to the pending Motion to Dismiss, so the basis of what she is seeking in this action remains unclear. Without more, the Court cannot determine whether or not the cross-claim, on its face, states a claim for relief that can be granted. **Defendant's Motion to Dismiss the cross-claim is granted. Ms. Irizarry's cross-claim is dismissed** without prejudice.

### D.  Staying and/or Transferring Count Two

Lastly, Defendant contends that if the Court denies his Motion to Dismiss, it should stay these proceedings and allow the state court to resolve the issue of Ms. Irizzary's potential entitlement to payments under the QDRO. (Def.'s Mot. to Dismiss 27-29.) In Count Two of the Amended Complaint, Plaintiff asks this Court to resolve an ambiguity in the QDRO, which Plaintiff claims is susceptible to two interpretations:

> Interpretation No. 1: [Ms. Irizarry] is entitled to share in [Defendant's] early retirement subsidy. Under this interpretation of the QDRO, [Defendant's] retained pension in the 50% QJSA would equal a monthly annuity benefit of $1,456.62 (with [Ms. Irizarry] as his surviving beneficiary being entitled to a monthly annuity benefit of $728.31 following [Defendant's] death) and [Ms. Irizarry's] monthly annuity benefit would be $696.81.
>
> Interpretation No. 2: [Ms. Irizarry] is not entitled to share in the early retirement subsidy and her benefit is to be subjected to early retirement discounting upon [Defendant's] commencement of benefits. Under this interpretation of the QDRO, [Defendant's] retained pension in the 50% QJSA would equal a monthly annuity benefit of $1,914.90 (with [Ms. Irizarry] as his surviving beneficiary being entitled to a monthly annuity benefit of $957.45 following

[Defendant's] death) and [Ms. Irizarry's] monthly annuity benefit
would be $208.05.

(Am. Compl. ¶ 49.) Defendant contends that this Court should stay the proceedings and transfer[8]

Plaintiff's request for declaratory judgment back to state court. (Def.'s Mot. to Dismiss 28.)

Defendant notes that "[i]ssuing a decree as to a spousal support obligation—which is essentially

what the QDRO is—typically falls beyond the jurisdiction of [f]ederal [c]ourts." (*Id.* (citing *Brown

v. Brown*, 783 F. App'x 267, 268 (3d Cir. 2019)).)

Federal courts have jurisdiction to hear cases "arising under" federal law, 28 U.S.C. § 1331,

and actions between diverse parties, 28 U.S.C. § 1332. Federal jurisdiction, while broad, is not

unlimited. For example, "[t]he Supreme Court has long recognized a domestic relations exception

to federal diversity jurisdiction." *Matusow v. Trans-Cnty. Title Agency, LLC*, 545 F.3d 241, 245

(3d Cir. 2008) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 693-94 (1992)). This exception

"divests the federal courts of power to issue divorce, alimony, and child custody decrees."

*Ankenbrandt*, 504 U.S. at 703. It does not, however, "exclude domestic relations cases from the

jurisdiction otherwise granted by statute to the federal courts." *Id.* at 695. Congress expressly

granted district courts with jurisdiction over § 1132 actions, including actions for declaratory

judgment to clarify a beneficiary's rights. *See* 29 U.S.C. § 1132(e).

Plaintiff is not asking the Court for a divorce, alimony, or child custody decree.

*Ankenbrandt*, 504 U.S. at 704 ("This lawsuit in no way seeks such a decree; rather, it alleges that

respondents . . . committed torts against [appellant's] children . . . . Federal subject-matter

jurisdiction pursuant to § 1332 thus is proper in this case."). Rather, as an administrator of the

Pension Plan, Plaintiff asks the Court to clarify how much it must pay Ms. Irizarry, an alleged

---

[8] The procedural vehicle for Defendant's request for a "transfer" of the state claims from federal
to state court is unclear. (Def.'s Mot. to Dismiss 27-29.)

beneficiary under ERISA. (*See* Am. Compl. ¶ 49.) The Court agrees with Plaintiff that interpreting the QDRO is "central to the recoupment claim asserted in Count [One]." (Pl.'s Opp'n Br. 22 (noting that "the ambiguity in the QDRO . . . directly affects the determination of the amount of benefits which were overpaid to Mr. Irizarry").) Further, in terms of judicial efficiency and economy, maintaining jurisdiction over the declaratory judgment claim as to the correct interpretation of the QDRO in a single proceeding is an efficient method of achieving a final and timely resolution of this case. *C.I.N. Constr., Inc. v. Hunt Constr. Grp., Inc.*, No. 08-5810, 2009 WL 2998965, at *13 (D.N.J. Sep. 18, 2009) (noting that "[h]aving two separate proceedings is inefficient and a waste of the resources of both the parties and the courts."). Congress granted federal courts jurisdiction over claims arising under 28 U.S.C. § 1132 and conferred upon them the power to issue declaratory judgments. 28 U.S.C. § 2201. This Court therefore concludes that it has jurisdiction over Count Two and declines to stay the proceedings or transfer this count to state court.

IV.     **CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is granted in part, and denied in part. Defendant's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) is denied. Defendant's Motion to Dismiss Ms. Irizarry's cross-claim is granted.


MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE